# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVIS S. CONKLIN,<br>    Plaintiff<br><br>vs.<br><br>CO HAJEC, et al.,<br>    Defendants. | C.A.No. 15-39<br><br>Chief District Judge Conti<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.   RECOMMENDATION

It is respectfully recommended that the motion for summary judgment filed by Defendants [ECF No. 55] be granted.

## II.  REPORT

### A.   Relevant Procedural History

Plaintiff, a state inmate incarcerated at SCI Pittsburgh, initiated this civil rights action on January 1, 2015, alleging violations of his First, Fifth, and Fourteen Amendment rights. As Defendants in this action, Plaintiff has named: Corrections Officer Hajec; Unit Manager Shane Dady; and John Wetzel, Secretary of the Pennsylvania Department of Corrections. [ECF No. 20]

Defendants have filed a motion for summary judgment, seeking judgment in their favor as to each of Plaintiff's claims. [ECF No. 7]. Plaintiff has filed a two-paragraph "motion in opposition to Defendants' motion." [ECF No. 63]. Accordingly, the motion is ripe for disposition.

### B. Factual Background

Plaintiff alleges that he did not receive "none or some of his mail" sent by his stepmother between "February 31, 2013 [sic], and April 2, 2015." [ECF No. 20 at 3]. He also claims that on April 2, 2015, he sent five articles of mail, but did not receive any responses thereto. [Id.] He claims that "[t]his mail and his legal materials from his cell have been seized on many occasions and has caused him irreparable harm by Defendants Hajec and Dady." [Id.] In addition, he avers that "when the grievances were filed C/O II Chesmer and others seized those exhaustion papers and prevented the exhaustion process while under color of state law and told Plaintiff to shut the f*** up[.]" [Id. at 3-4]. According to Plaintiff, "Major Dady is also included and had failed to investigate grievances in which he only questioned (SRTU) staff and failed to research Plaintiff's records as the (SRTU) unit manager." [Id. at 4]. He goes on to claim that Defendant Dady "then granted (SRTU) staff the means in which to seize and destroy all relevant authentic records in [his] cell as a campaign of harassment and Plaintiff's case was stopped by this lynch mob[.]" [Id.]. With regard to Defendant Wetzel, Plaintiff claims that he sent him a letter complaining "to him concerning all the relevant materials in this above-captioned complaint[.]" [Id. at 4-5].

On January 12, 2014, Plaintiff filed a grievance (No. 492829), in which he claimed that "the bookkeeper/mailroom staff illegally and/or unlawfully seiz[ed] [his] mail on 1-2-14." [ECF No. 58-1, Ex. 1]. His grievance was denied because he was on "grievance restriction." [Id.] The denial of his grievance was not appealed.

On April 18, 2014, Plaintiff filed a grievance (No. 506392), claiming that corrections officers were "stopping and/or seizing" mail sent by his mother. [ECF No. 58-2, Ex. 2] On May 11, 2014, the grievance was denied after an investigation, and Plaintiff did not appeal.

2

On July 23, 2014, Plaintiff filed another grievance (No. 519550), complaining that on July 12, 2014, he wrote a letter to his stepmother, which he claims she never received. [ECF No. 58-3, Ex. 3]. He further claimed that he never received a cash slip saying that the mail had been sent out. [Id.]. This grievance was denied as frivolous, and Plaintiff did not appeal.

### C. Standards of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed. R. Civ. P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health Sys. v. Met. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of

3

proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247–249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552,

4

555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Dep't of Corr., 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)).

### D. Discussion

Defendants seek summary judgment, arguing that Plaintiff failed to exhaust the prison grievance procedure and that there was no violation of Plaintiff's constitutional rights.

#### 1. The Exhaustion Requirement

Failure to exhaust is an affirmative defense that must be pled and proven by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Id. (quoting Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992)).

The PLRA, 42 U.S.C. § 1997e(a), provides:

no action shall be brought with respect to prison conditions under
section 1983 of this title . . . by a prisoner confined in any jail, prisons,
or other correctional facility until such administrative remedies as
are available are exhausted.

Id. The Supreme Court has held that the language of this provision "mandates that an inmate

5

exhaust such administrative remedies as are available before bringing suit to challenge prison conditions." Ross v. Blake, --- U.S. ----, 136 S. Ct. 1850, 1855 (June 6, 2016).[1]

The PLRA's exhaustion requirement is strictly enforced by the courts. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). The PLRA requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83.[2]

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

### 2. The Administrative Process Available to Pennsylvania State Inmates

---

[1] The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013); see also Moneyham v. Potter, 2016 WL 3476416, at *3 n.6 (M.D. Pa. June 27, 2016) ("[T]he Supreme Court of the United States has held that PLRA exhaustion is a precondition to suit.").

[2] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [. . .] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, within fifteen days of the incident, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") (formerly known as Central Office) within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd 532 U.S. 731 (2001). An inmate may not file the final appeal to SOIGA until he has received a response from the Superintendent.

### 3. Application to this Case

The evidence of record makes clear that Plaintiff did not exhaust his administrative remedies with respect to the claims he seeks to assert in this action. Although he filed three grievances tangentially related to the claims he now raises, he did not pursue those grievances through all levels of appeal, as is required to establish exhaustion. See Jones, 549 U.S. at 218. Plaintiff has not attempted to present any evidence to the contrary.

To be sure, an inmate need not exhaust administrative remedies that are not available to him, such as "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860. Ostensibly in an effort to come within the scope of this rule, Plaintiff alleges in the complaint that "when the grievances were filed C/O II Chesmer and others seized those exhaustion papers

7

and prevented the exhaustion process." [ECF No. 20 at 3-4]. Aside from this bald accusation, however, Plaintiff has not offered any details regarding the alleged interference with his ability to pursue the grievance process, let alone any actual evidence to support his assertion. See Celotex Corp., 477 U.S. at 325. In fact, he has not attempted to rebut Defendants' exhaustion argument in any way; his two-paragraph response to their motion for summary judgment does not even mention exhaustion. Furthermore, Defendants have submitted ample evidence demonstrating that Plaintiff had full access to the grievance process and had previously utilized the exhaustion process on numerous occasions, which belie his claims that he was somehow prevented by Defendants from using the grievance process to completion in this case. Because Defendants have established that Plaintiff failed to exhaust his administrative remedies, they are entitled to summary judgment.

## III. CONCLUSION

It is respectfully recommended that the motion for summary judgment filed by Defendants [ECF No. 55] be granted.

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen days. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

                                                                          <u>/s/ Susan Paradise Baxter</u>
                                                                          SUSAN PARADISE BAXTER
                                                                          United States Magistrate Judge

Dated: February 10, 2017